FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

2016 MAR 16  AM 10: 16

CLE...
MIDDLE DISTRICT FLORIDA
ORLANDO, FL

CASE NO.: 6:16-CV-435-ORL-37-DAB

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>**LILLY MANAGEMENT AND**<br>**MARKETING, LLC**, a Florida limited<br>liability company, also doing business as USA<br>Vacation Station,<br><br>   and<br><br>**KEVIN W. LAWRENCE**, individually and as<br>an officer of Lilly Management and Marketing,<br>LLC,<br><br>   Defendants. | |

## COMPLAINT FOR CIVIL PENALTIES,
## PERMANENT INJUNCTION, AND OTHER RELIEF

Plaintiff, the United States of America, acting upon notification and authorization

to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"),

pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. § 56(a)(1), for its complaint alleges:

1.      Plaintiff brings this action under Sections 5(a), 5(m)(1)(A), 13(b), 16(a),

and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and

Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the

"Telemarketing Act"), 15 U.S.C. § 6105, to obtain monetary civil penalties, a permanent

injunction, and other relief for Defendants' violations of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule (the "TSR" or "Rule"), as

amended, 16 C.F.R. Part 310 (2013).

<b><u>JURISDICTION AND VENUE</u></b>

2.      This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 53(b), and

56(a).  This action arises under 15 U.S.C. § 45(a).

3.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), (d) and

1395(a), and 15 U.S.C. § 53(b).  Defendants reside in and transact business in this

District.

<b><u>DEFENDANTS</u></b>

4.      Defendant Lilly Management and Marketing, LLC ("Lilly"), also doing

business as USA Vacation Station, is a for-profit Florida limited liability company with

its principal place of business at 6236 Kingspointe Parkway, #9, Orlando, FL 32819.

Lilly is a seller and telemarketer that initiates outbound telephone calls to induce

consumers to purchase goods or services from Lilly.  Lilly transacts or has transacted

business in this district and throughout the United States.

5.      Defendant Kevin W. Lawrence ("Lawrence") is the founder, registered

agent, operator, sole officer, and sole owner of Lilly.  Lawrence resides in this district

and, in connection with the matters alleged herein, transacts or has transacted business in

this district and throughout the United States.  At all times material to this Complaint,

acting alone or in concert with others, he has formulated, directed, controlled, had the

2

authority to control, or participated in the acts and practices of Lilly, including the acts
and practices set forth in this Complaint.

## COMMERCE

6.      At all times material to this Complaint, Defendants have maintained a
substantial course of trade or business in marketing goods or services via the telephone,
in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15
U.S.C. § 44.

## THE TELEMARKETING SALES RULE
## AND THE NATIONAL DO NOT CALL REGISTRY

7.      Congress directed the Commission to prescribe rules prohibiting abusive
and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15
U.S.C. §§ 6101-6108.  The Commission adopted the original TSR in 1995, extensively
amended it in 2003, and amended certain provisions thereafter.  16 C.F.R. Part 310.

8.      Among other things, the 2003 amendments to the TSR established a do-
not-call registry, maintained by the Commission (the "National Do Not Call Registry" or
"Registry"), of consumers who do not wish to receive certain types of telemarketing
calls.  Consumers can register their telephone numbers on the Registry without charge
either through a toll-free telephone call or over the Internet at donotcall.gov.

9.      Consumers who receive telemarketing calls to their registered numbers
can complain of Registry violations the same way they registered, through a toll-free
telephone call or over the Internet at donotcall.gov, or by otherwise contacting law
enforcement authorities.

10.     The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at telemarketing.donotcall.gov, to pay the fee(s) if required, and to download the numbers not to call.

11.     Under the TSR, a "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(cc).  A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.  *Id.* § 310.2(aa).

12.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.  16 C.F.R. § 310.2(v).

13.     The TSR prohibits telemarketers from initiating an outbound telephone call to any consumer that delivers a pre-recorded message, and prohibits sellers from causing a telemarketer to initiate such a call.  16 C.F.R. § 310.4(b)(1)(v).

14.     The TSR prohibits telemarketers from initiating an outbound telephone call to numbers on the Registry, and prohibits sellers from causing a telemarketer to initiate such a call.  16 C.F.R. § 310.4(b)(1)(iii)(B).

15.     The TSR prohibits telemarketers from initiating an outbound telephone call to any consumer when that consumer previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered, and prohibits sellers from causing a telemarketer to initiate such a call.  16 C.F.R. § 310.4(b)(1)(iii)(A).

4

16.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## DEFENDANTS' BUSINESS PRACTICES

17.     Lilly is a "seller" and "telemarketer" engaged in "telemarketing," as those terms are defined in the TSR.

18.     Lilly markets and sells vacation packages under the name "USA Vacation Station."

19.     At all times material to this Complaint, Lilly had lead generation contracts with Companies A, B, C, D, and E.  These companies own or manage resort properties in Florida and Mexico.  Each vacation package sold by Lilly typically includes accommodation at timeshare resorts in the Orlando, Florida area and at least one other location, as well as one or more ancillary products such as theme park tickets or discounted car rentals.  During the vacation, the customer must attend a lengthy sales presentation designed to induce the purchase of a timeshare interest at the resort.

20.     Lilly typically sells the vacation packages for $500 or more.  For every vacation package used, Lilly receives an additional "fulfillment payment" from the resort, which Lilly uses to pay for the goods and services included in the vacation package.

21.     To sell vacation packages, Lilly engages in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by the use of one or more telephones and which involves more than one interstate telephone call.

22.     The telemarketing campaign involves four steps.  First, Lilly buys leads—i.e., lists of consumers' telephone numbers—from various third parties.  Second, Lilly hires an individual proficient in operating automated high-speed telephone dialing equipment (the "dialer") to initiate outbound telephone calls to the leads. Third, the dialer initiates calls to the leads that play a pre-recorded message touting vacation packages and asking the recipient to "press one" to take advantage of the offer.  Fourth, when a call recipient presses a button, the dialer transfers the call to a sales agent of Lilly, who then attempts to induce the consumer to purchase one of Lilly's vacation packages.

23.     These calls begin by delivering a pre-recorded message stating: "Let the memories begin . . . . You have been selected for a magical Walt Disney World area holiday special.  Your claim number is 545.  To take advantage of this promotion, press 1 now."  Consumers who press a button on their telephones in response to the pre-recorded message are transferred to a sales agent of Lilly, who asks the consumer for their claim number, and then attempts to sell the consumer a vacation package.

24.     During the telemarketing campaign described above, Lilly has paid an average of less than one cent per outbound telephone sales call.

25.     In the course of the telemarketing campaign described above, Lilly has initiated tens of millions of outbound telephone calls to telephone numbers on the National Do Not Call Registry.  Lilly has initiated these calls to consumers residing in all 50 states and the District of Columbia.

6

26.    Lilly does not check whether its leads are on the National Do Not Call Registry before initiating the telemarketing calls described above, and does not require the third parties from whom it purchases leads, or its dialer, to do so.

27.    In the course of the telemarketing campaign described above, Lilly has initiated thousands of outbound telephone calls to consumers who have previously informed Lilly that they do not wish to receive calls by or on behalf of Lilly.

28.    On information and belief, in the course of the telemarketing campaign described above, Lilly has sold vacation packages to consumers residing in all 50 states and the District of Columbia.

29.    On information and belief, it is profitable for Lilly to initiate more than 100,000 outbound telephone sales calls that deliver a pre-recorded message if it results in even one call recipient purchasing a vacation package.

30.    Lilly initiated the telemarketing campaign described above in or about January 2013.

31.    As early as April 2013, consumers began complaining to the defendants that they had received a telephone sales call that delivered a pre-recorded message or that they had been called despite the fact that their phone numbers were on the National Do Not Call Registry.  A number of complaining consumers told the defendants that such calls were unlawful pursuant to the Telemarketing Sales Rule.  Consumers also complained of receiving such telemarketing calls despite previously making a specific request to receive no further calls from Lilly.  Consumers made these complaints to the defendants throughout the telemarketing campaign.

7

32.     On or about April 2013, the Better Business Bureau also notified Lilly of complaints it received from consumers complaining that they had received calls from Lilly that delivered a pre-recorded message, that they had received such solicitations despite their phone numbers being on the National Do Not Call Registry, or that they had received such solicitations despite previously making a specific request to receive no further calls from Lilly.

33.     On March 21, 2014, the Better Business Bureau issued a letter to Lawrence with the subject header "Complaint Pattern & Sales Practices."  In the letter, the Better Business Bureau notified Lawrence of a "pattern of complaints regarding the violation of the National Do Not Call Registry."   The letter also notified Lawrence that "[c]onsumers have also requested to be removed from your list and claim your company continues to call."

34.     On or about April 27, 2015, the Federal Trade Commission issued a Civil Investigative Demand to Lilly.  The Civil Investigative Demand identified the Telemarketing Sales Rule provisions applicable to Lilly's conduct and required Lilly to produce documents and provide written answers to interrogatories regarding its operation of the telemarketing campaign described above.

35.     On or about June 1, 2015, Lilly expanded the telemarketing campaign described above and began initiating outbound telephone calls to consumers in Canada.

36.     Lilly continued the telemarketing campaign described above until at least June 2015.

8

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### Count I
### Calls that Deliver a Pre-Recorded Message

37.     In numerous instances, in connection with telemarketing, Defendants have initiated or caused others to initiate an outbound telephone call to a person that delivered a pre-recorded message in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(v).

### Count II
### Calls to Persons Registered on the National Do Not Call Registry

38.     In numerous instances, in connection with telemarketing, Defendants have initiated or caused others to initiate an outbound telephone call to a person's telephone number on the National Do Not Call Registry in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(iii)(B).

### Count III
### Failing to Honor Entity-Specific Do Not Call Requests

39.     In numerous instances, in connection with telemarketing, Defendants have initiated or caused others to initiate an outbound telephone call to a person who has previously stated that he or she does not wish to receive such a call made by or on behalf of Lilly in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(iii)(A).

### CONSUMER INJURY

40.     Consumers in the United States have suffered and will suffer injury as a result of Defendants' violations of the TSR.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

41.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

42.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of up to $16,000 for each violation of the TSR after February 9, 2009, 16 C.F.R. § 1.98(d) (2013).  Defendants' violations of the TSR were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

43.     This Court, in the exercise of its equitable jurisdiction, may award ancillary relief to remedy injury caused by Defendants' violations of the TSR and the FTC Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court, as authorized by Sections 5(a), 5(m)(1)(A), and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and pursuant to its own equitable powers:

A.     Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this complaint;

B.     Award Plaintiff monetary civil penalties from each Defendant for every violation of the TSR;

10

   C. Enter a permanent injunction to prevent future violations of the TSR and the FTC Act by Defendants; and

   D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: March 16, 2016

OF COUNSEL:

LOIS C. GREISMAN
Associate Director for Marketing Practices
FEDERAL TRADE COMMISSION

Tejasvi Srimushnam, DC #991011
Andrew S. Hudson, DC #996294
Attorneys
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop CC-8528
Washington, DC 20580
TEL: (202) 326-2959, -2213
FAX: (202) 326-3395
tsrimushnam@ftc.gov, ahudson@ftc.gov

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

A. LEE BENTLEY, III
UNITED STATES ATTORNEY

LACY R. HARWELL, JR.
ASSISTANT UNITED STATES
ATTORNEY
Florida Bar No. 714623
400 North Tampa St., Suite 3200
Tampa, FL 33602
TEL: (813) 274-6000
FAX: (813) 274-6200
Randy.Harwell@usdoj.gov

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division
U.S. DEPARTMENT OF JUSTICE

MICHAEL S. BLUME
Director
Consumer Protection Branch

ANDREW CLARK
Assistant Director
Consumer Protection Branch

RAQUEL TOLEDO
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
PA Bar No. 321175
P.O. Box 386
Washington, D.C. 20044
TEL: (202) 532-4719
FAX: (202) 514-8742
Raquel.Toledo@usdoj.gov